HECTOR GEMBE,

        Petitioner,

v.

                                            Civil No. 16-11548

                                            HON. AVERN COHN

THOMAS WINN,

        Respondent.

_____/

## MEMORANDUM AND ORDER
## DENYING THE PETITION FOR THE WRIT OF HABEAS CORPUS
## AND
## DENYING A CERTIFICATE OF APPEALABILITY

### I. Introduction

This is a pro se habeas case under 28 U.S.C. § 2254. Petitioner, a state prisoner, challenges his conviction and sentence of twelve and a half to twenty-five years for first-degree criminal sexual conduct. Petitioner contends that prejudicial evidence about a murder was injected into evidence, that trial counsel contributed to the admission of the evidence, that prosecution witnesses vouched for the complaining witness's credibility, and that the trial court erred in his sentencing. Respondent, through the Attorney General's office, contends that certain claims are procedurally defaulted and other claims are not cognizable on habeas review or were reasonably decided by the Michigan Court of Appeals. See People v. Gembe, No. 316911, 2014 WL 6462411 (Mich. Ct. App. Nov. 18, 2014) (unpublished). For the reasons set forth below, the petition will be denied.

## II. Background

The state court accurately summarized the facts leading to Petitioner's conviction as follows:

> Defendant was accused of repeatedly sodomizing seven-year-old MH for an extended period. At the time, MH was a non-English-speaking, Mexican immigrant. Her mother would leave for work before MH left for school and would return about 30 minutes after MH returned home. Defendant was a family friend who drove MH, together with his daughter and two of his other relatives, to and from school in his white, full-size van. After pulling into his driveway after school, defendant would let the other girls out first and tell them to go home. When MH attempted to leave, defendant would push her back inside, direct her to the rear bench, have her turn around, and then force her to her hands and knees. Defendant would then lift up her dress or pull down her pants, remove her underwear, and sodomize her.
>
> MH testified that defendant would assault her every time he picked her up from school and that these incidents continued for about a year. She said defendant told her not to tell her mother because "she can't do nothing, she's by herself." MH explained that she never reported the incidents because she was scared that her mother would get into trouble. Several years later, in 2012, MH told her cousin that defendant had sexually abused her. She said she was no longer afraid to report defendant because she was older, had become a citizen, and knew "[h]er rights."

Gembe, 2014 WL 6462411 at *1.[1]

Petitioner was tried before a jury. On January 30, 2013, the jury found Petitioner guilty of one count of first-degree criminal sexual conduct. See Mich. Comp. Laws § 750.520b(1)(a) (sexual penetration of a person under the age of thirteen). On February 28, 2013, the trial court exceeded the recommended sentencing guidelines and sentenced Petitioner to prison for twelve and a half to twenty-five years with a credit of

---

[1] Like the state court, this Court will refer to the complaining witness by her initials.

182 days for time served. A Panel of the Michigan Court of Appeals affirmed Petitioner's conviction in a per curiam opinion. See Gembe, 2014 WL 6462411.[2] On December 9, 2015, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the questions presented to it. See People v. Gembe, 498 Mich. 935 (2015).

Petitioner then filed a habeas petition, raising the following claims as phrased by Petitioner:

GROUND ONE: Ineffective Assistance of Counsel

Supporting Facts: Counsel['s] unprofessional performance.

GROUND TWO: Denial of 14th Amendment to Due Process and Fair Trial and Abuse of Discretion.

Supporting Facts: Prejudice by Prosecution on use of erronnious (sic) information to use information without a conviction.

Attached to the form is Petitioner's state appellate court brief where he styled his claims as follows:

I. The defendant was denied a fair trial because prejudicial evidence of an alleged murder in Mexico was injected into the trial and [he] was denied the effective assistance of counsel because his trial attorney contributed to placing this prejudicial evidence before the jury.

II. The defendant was denied a fair trial because the prosecutor's expert witness effectively vouched for the credibility of the complainant by implying that false

---

[2] Circuit Judge William C. Whitbeck concurred with the majority in part and dissented in part. He voted to vacate Petitioner's sentence and to remand the case for re-sentencing because the trial court did not explain why its departure from the sentencing guidelines was more proportional to Petitioner's offense than the recommended sentence. Gembe, 2014 WL 6462411, at *7 and *8.

allegations amounted to less than one percent of complaints made.

III. The defendant's due process right to a fair trial was violated by the admission of improper opinion testimony by Detective Brad Wise, who vouched for the credibility of the complainant.

IV. The trial court erred in scoring OV8 at 15 points and the defendant should be resentenced because the recommended minimum sentencing range was affected.

V. The trial court erred in sentencing the defendant to a prison term substantially in excess of the recommended minimum sentence range without adequate reasons for the amount of the upward departure.

The Court construes the pro se petition liberally, as it must under Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam), to raise the above five claims, which Petitioner presented to the Michigan Court of Appeals and to the Michigan Supreme Court.

### III. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), as codified at 28 U.S.C. § 2254(d), provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly,

> [w]hen reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington, supra, at 102–103, 131 S.Ct. 770 (internal quotation marks omitted).

Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (per curiam). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification

5

that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

In simple terms, the Supreme Court has said that the standard of review is "difficult to meet" and is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (quoting Harrington, 562 U.S. at 102, and Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam)). The Supreme Court has further said that a federal court must guard against "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Renico v. Lett, 559 U.S. 766, 779 (2010).

Finally, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).

### IV. Analysis

#### A. Claim Regarding Evidence of a Murder

Petitioner alleges that he was denied a fair trial because prejudicial evidence about an alleged murder in Mexico was injected into the trial. Petitioner further alleges that he was denied the effective assistance of counsel because his trial counsel contributed to placing the evidence before the jury. The Michigan Court of Appeals provided the following background for this claim:

> On cross-examination, defense counsel asked MH a series of questions suggesting that she was falsely accusing defendant of sexual abuse

that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

In simple terms, the Supreme Court has said that the standard of review is "difficult to meet" and is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (quoting Harrington, 562 U.S. at 102, and Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam)). The Supreme Court has further said that a federal court must guard against "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Renico v. Lett, 559 U.S. 766, 779 (2010).

Finally, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).

### IV. Analysis

#### A. Claim Regarding Evidence of a Murder

Petitioner alleges that he was denied a fair trial because prejudicial evidence about an alleged murder in Mexico was injected into the trial. Petitioner further alleges that he was denied the effective assistance of counsel because his trial counsel contributed to placing the evidence before the jury. The Michigan Court of Appeals provided the following background for this claim:

> On cross-examination, defense counsel asked MH a series of questions suggesting that she was falsely accusing defendant of sexual abuse

> because her stepfather and defendant had a "beef." During this questioning, MH explained that one reason she had failed to report the issue was because she had heard that defendant "killed someone in Mexico." The lower court sustained defense counsel's immediate objection and told the jury that there was "obviously" no factual basis for the comment and that it was not to consider it.
>
> On re-cross-examination, defense counsel attempted to use MH's statement against her by insinuating that she was falsely accusing defendant of sexual abuse to get justice for the murder she believed he had committed in Mexico. The lower court then found that defense counsel had opened the door to questions on this issue and allowed the prosecution to question MH about the murder allegation on its second re-direct examination. MH then reiterated that she did not report the abuse because she believed defendant was dangerous and that he had killed someone in Mexico.

Gembe, 2014 WL 6462411, at *1.

### 1. Evidentiary Error

Petitioner contends that there was no conceivable basis for admitting evidence of the alleged murder and that any benefit to the prosecutor from the use of other-acts evidence was outweighed by its prejudicial effect on his defense. Petitioner also contends that the trial court essentially reversed its ruling on the admissibility of the evidence without good reason when it allowed the prosecutor to pursue the issue during her second re-direct examination. The Michigan Court of Appeals concluded on review of this claim that Petitioner's right to a fair trial was not violated by the admission of the evidence.

Petitioner's claim lacks merit because errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, usually may not be questioned in a federal habeas corpus proceeding. Cooper v. Sowders, 837 F.2d 284,

7

286 (6th Cir. 1988). To the extent that testimony about the alleged murder violated Michigan's rules of evidence, the error is not cognizable here because

> it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.

Estelle v. McGuire, 502 U.S. 62, 68 (1991).

Furthermore, there is no clearly established Supreme Court precedent which holds that a state violates due process by admitting other "bad acts" evidence. Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003). Therefore, the state courts' decisions on Petitioner's claim were not contrary to, or unreasonable applications of, Supreme Court precedent, for purposes of § 2254(d)(1). Even if Petitioner's claim were cognizable on habeas review, a state court's evidentiary error does not warrant habeas relief unless the error was so egregious as to result in fundamental unfairness. Bugh, 329 F.3d at 512. That is not the case here, as explained below.

The disputed testimony about an alleged murder first occurred when MH made the remark that she did not want other people to experience what happened to her because she had heard that Petitioner killed someone in Mexico. (1/29/13 Trial Tr. at 63.) The trial court sustained defense counsel's motion to strike the remark as unresponsive. The court then instructed the jury that there was no factual basis for MH's comment and that the jury was not to consider it. Id. at 63-64.

The prosecutor did not address the issue on her first re-direct examination of MH, but MH stated that she wanted justice and that Petitioner did not get anything for what he did in Mexico. Id. at 65-72. Defense counsel then pursued the issue on re-cross

8

examination, and MH repeated that Petitioner did not get anything for killing a person in Mexico. Id. at 72-73.

The prosecutor then argued that defense counsel had opened the door to evidence of the murder. The trial court agreed and permitted the prosecutor to ask MH during the second re-direct examination whether MH was afraid of Petitioner because she thought he had killed someone in Mexico. MH then stated that she delayed disclosing Petitioner's sexual abuse in part because she feared Petitioner. Id. at 73-74. After MH concluded her testimony and the jury was excused from the courtroom, the trial court stated that defense counsel had invited MH's comments and that the court was not going to give any further curative instructions. Id. at 77-78.

Even if the jurors chose to believe that Petitioner had murdered someone in Mexico, they would not necessarily have concluded that he was guilty of committing criminal sexual conduct with MH. As defense counsel pointed out in his closing argument, there was no apparent connection between Petitioner's alleged conduct in Mexico many years earlier and the current case.

The trial court, moreover, initially instructed the jurors that there was no factual basis for MH's comments that Petitioner had killed someone in Mexico and that the jurors should not consider the comment. Id. at 63-64. In the court's subsequent charge to the jury, the court also told the jurors that they must not let sympathy or prejudice influence their decision. (1/30/13 Trial Tr. at 149.) Jurors are presumed to follow a trial court's instructions to them. Richardson v. Marsh, 481 U.S. 200, 211 (1987).

Thus, the disputed evidence about a murder committed in Mexico did not render Petitioner's trial fundamentally unfair. In fact, defense counsel ultimately used the evidence to suggest that MH had a motive for lying about what Petitioner did to her. Petitioner's right to due process was not violated, and he is not entitled to relief on this evidentiary claim.

## 2. Ineffective-Assistance-of-Counsel

Petitioner also contends that defense counsel was ineffective for continuing to ask MH about the murder. The Michigan Court of Appeals found that this claim failed because questioning MH about the murder was a reasonable trial strategy.

To prevail on his ineffectiveness claim, Petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). Petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," id. at 688, and "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Harrington, 562 U.S. at 105 (internal and end citations omitted).

The Court agrees with the Michigan Court of Appeals that defense counsel's performance did not fall below an objective standard or reasonableness. As the Court of Appeals explained:

> MH first made the murder allegation during cross-examination as a nonresponsive answer to one of defense counsel's questions. As a result, defense counsel only addressed the issue after MH had made the allegation in front of the jury.

10

Gembe, 2014 WL 6462411, at *3. Furthermore,

> [t]hroughout the trial, defense counsel theorized that MH was falsely accusing defendant. When MH commented during cross-examination that she believed defendant was not punished for a murder he committed in Mexico, it provided a possible motive she might have had for making such false allegations.

Id.

The Court agrees with the Michigan Court of Appeals that defense counsel's continuing questions about the alleged murder were part of a reasonable strategy to discredit MH. Defense counsel used MH's testimony about a murder to show that MH fabricated the criminal sexual misconduct charge to punish Petitioner for a murder he committed without any repercussions. This use of the evidence did not amount to ineffective assistance. Therefore, habeas relief is not warranted on this ground.

## B. Vouching

In his second and third claims, Petitioner contends that his rights to a fair trial and due process of law were violated when prosecution witnesses vouched for MH. The Michigan Court of Appeals explained the context for these claims as follows:

> The lower court qualified psychologist Randall E. Haugen as an expert witness regarding the character and behavior of sexual assault victims, over defendant's objection. Haugen testified that he had treated sexual assault victims as part of his psychology practice for more than 20 years, but admitted that he did not speak with MH regarding this particular case. Haugen explained that victims of sexual abuse vary in the amount of time they delay before reporting an incident. He stated that some wait years.
>
> On cross-examination, defense counsel asked Haugen if he had ever dealt with individuals who made false allegations of sexual abuse. Haugen stated that he had, further explaining that typically false allegations are made to achieve some secondary gain. On redirect, the

prosecution followed up on the issue, asking Haugen if false accusations are common. Haugen said that he does roughly 20 or 30 assessments a week and had "a couple" false reports of sexual abuse the prior year.

Additionally, Brad Wise, a detective, testified that defendant voluntarily came in for an interview after he contacted him regarding the investigation. The prosecution asked Wise to describe some of his interview techniques. Wise explained that he sometimes tells suspects that he believes they are lying, or that he believes the victim in a case if "the facts bear that out." He also stated that he uses this technique regardless of whether he personally believes that what he is saying is true, because he will use whatever technique will help elicit information from a suspect. The prosecution moved to admit a videotaped recording of Wise's interview of defendant. Before playing the recording, the lower court instructed the jury as follows: "The admissible evidence here are [sic] [defendant's] statements, and—and the comments of Detective Wise and his statements throughout, they're not evidence and they're not—and they shouldn't be considered as evidence by you.... They just are there to give meaning to any responses by the Defendant...." In the video, Wise repeatedly asks, "she's telling the truth, isn't she?"

Gembe, 2014 WL 6462411, at *3 (footnote omitted).

Petitioner asserts that Haugen vouched for MH's credibility by implying that false allegations amount to less than one percent of sexual abuse complaints. See 1/29/13 Trial Tr. at 102-03 (Haugen's testimony that he performed twenty or thirty assessments each week and that he detected "a couple" of false allegations during the previous year).

Petitioner also says that Detective Wise also vouched for MH when Wise responded to the prosecutor's question regarding whether he tells suspects that he believes the victim because that is true. Wise answered the question by saying, "Yes, oftentimes, I'll tell people that I don't' believe them and I believe the other person because the facts bear that out." Id. at 118.

### 1. Procedural Default

The State argues that Petitioner's vouching claims are procedurally defaulted because he did not object to the witnesses' comments at trial on the basis that the witnesses vouched for MH.  A procedural default is "a critical failure to comply with state procedural law."  Trest v. Cain, 522 U.S. 87, 89 (1997 ).  Under the doctrine of procedural default, "a federal court will not review the merits of [a state prisoner's] claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule."  Martinez v. Ryan, 566 U.S. 1, 9 (2012).  In this Circuit,

> "[a] habeas petitioner's claim will be deemed procedurally defaulted if each of the following four factors is met:  (1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner has not shown cause and prejudice excusing the default."  [Jalowiec v. Bradshaw, 657 F.3d 293, 302 (6th Cir. 2011)].  To determine whether a state procedural rule was applied to bar a habeas claim, [courts] look "to the last reasoned state court decision disposing of the claim."  Guilmette v. Howes, 624 F.3d 286, 291 (6th Cir. 2010) (en banc).

Henderson v. Palmer, 730 F.3d 554, 560 (6th Cir. 2013).

### 2. Application

The state procedural rule in question here is Michigan's contemporaneous-objection rule, which requires defendants in criminal cases to preserve their appellate claims by objecting on the same ground in the trial court.  People v. Buie, 825 N.W.2d

361, 374 (Mich. 2012). Petitioner did not object to the witnesses' testimony at trial on the basis that the testimony constituted vouching.[3] Therefore, the first factor is satisfied.

The second factor is also satisfied because the Michigan Court of Appeals explicitly stated on review of Petitioner's claims that the issues were not preserved for appeal. The Court of Appeals noted that Petitioner did not object to Haugen's testimony regarding the frequency of false sexual abuse claims and that Petitioner did not object to Wise's testimony about his investigative techniques on the basis that Wise was vouching.

The third procedural-default factor is whether the state procedural rule in question was an adequate and independent state ground for denying review of a federal constitutional claim. "The adequacy of a state procedural bar turns on whether it is firmly established and regularly followed; a state rule is independent if the state court actually relies on it to preclude a merits review." Biros v. Bagley, 422 F.3d 379, 387 (6th Cir. 2005) (citing Abela v. Martin, 380 F.3d 915, 921 (6th Cir. 2004)).

"Michigan's contemporaneous-objection rule is both a well-established and normally enforced procedural rule," Taylor v. McKee, 649 F.3d 446, 451 (6th Cir. 2011), and the Michigan Court of Appeals relied on the rule to preclude full review of Petitioner's vouching claims. The third procedural-default factor is satisfied.

---

[3] Petitioner did object when the prosecutor asked Wise whether he sometimes tells suspects that he believes another witness because he actually believes the victim. But the basis for the objection was that the prosecutor's question was leading. (1/29/13 Trial Tr. at 117-18.)

The fourth factor requires a habeas petitioner to show "cause" for his state procedural error and resulting prejudice. Petitioner has not alleged cause for his failure to object at trial or resulting prejudice. The Court, therefore, considers the "cause and prejudice" argument abandoned. Roberts v. Carter, 337 F.3d 609, 613 (6th Cir. 2003).

In the absence of "cause and prejudice," a habeas petitioner may pursue a procedurally defaulted claim only if he can demonstrate that failure to consider his claim will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.' " Lundgren v. Mitchell, 440 F.3d 754, 764 (6th Cir. 2006). "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995).

Petitioner has not presented the Court with any new evidence of actual innocence. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to address the substantive merits of Petitioner's vouching claims. Petitioner's claims of witness vouching are procedurally defaulted.

### C. Sentence

Petitioner's final two claims challenge his sentence.

#### 1. Scoring the Sentencing Guidelines

Petitioner alleges first that the trial court erred when it scored fifteen points for offense variable eight (asportation of the victim). This claim does not warrant habeas

relief because a challenge to the state court's application and interpretation of state sentencing guidelines is "a matter of state concern only," Howard v. White, 76 F. App'x 52, 53 (6th Cir. 2003), and "federal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

Moreover, the Michigan Court of Appeals upheld the trial court's scoring of offense variable eight because the evidence established that Petitioner moved MH from the front of his van to the back of the van where he would not be observed by other people. The state court's interpretation of state law binds this Court sitting in habeas corpus. Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

Petitioner cites Townsend v. Burke, 334 U.S. 736 (1948), for the principle that defendants have a constitutional right to a sentence based on accurate information. According to Petitioner, a correct score of zero for offense variable eight would have reduced the upper limit of his minimum sentencing guidelines range by fifteen months. Petitioner's reliance on Townsend is misplaced under the circumstances. The trial court, however, exceeded the sentencing guidelines, as scored at Petitioner's sentencing, by over five years because it was not convinced that a sentence within the guidelines range was appropriate. The trial court stated that the guidelines did not adequately take into account the extent of the sexual abuse or the complainant's vulnerability. (2/28/13 Sentencing Tr. at 22-23.) The alleged error in scoring offense variable eight was harmless, because the trial court did not think that the sentencing guidelines as calculated – with a score of fifteen points for offense variable eight – were sufficiently severe.

### 2. Exceeding the Sentencing Guidelines

In Petitioner's fifth and final claim, he contends that the trial court sentenced him to a prison term substantially in excess of the recommended minimum sentence range without providing adequate reasons for the amount of the upward departure. In its majority opinion, the Michigan Court of Appeals determined that the trial court provided substantial and compelling reasons for the upward departure from the sentencing guidelines. The court of appeals noted that Petitioner had sexually abused MH for a long time and that MH was a particularly vulnerable victim because she came to this country with only one family member, and she could not speak English well. The Court of Appeals ultimately concluded that Petitioner's sentence was proportional to the seriousness of the crime.

Petitioner is not entitled to relief on this claim because, as explained above, the Court may not grant the writ of habeas corpus on the basis of a perceived error of state law.

### V. Conclusion

For the reasons stated above, the state-court decisions were not contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, or unreasonable determinations of the facts. The state-court decisions also were not so lacking in justification that there was an error beyond any possibility for fairminded disagreement.

Accordingly, the petition for the writ of habeas corpus petition is DENIED.

Petitioner may not appeal this opinion without first obtaining a certificate of appealability, 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1), and a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of [her] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

Reasonable jurists could not disagree with the Court's resolution of Petitioner's first, fourth, and fifth claims. Reasonable jurists also could not debate whether the Court's procedural ruling on Petitioner's second and third claims was correct or whether the allegations state a valid claim of the denial of a constitutional right. Accordingly, a certificate of appealability is DENIED.

SO ORDERED.

s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: 2/11/2019
      Detroit, Michigan